1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10  CORY GAINES,

11          Petitioner,              2: 09 - cv - 1144 GEB TJB

12      vs.

13  MIKE MCDONALD, Warden,

14          Respondent.              FINDINGS AND RECOMMENDATIONS

15  _____/

16                          I. INTRODUCTION

17      Petitioner is a state prisoner proceeding *pro se* with an application for writ of habeas

18  corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2006 conviction following a

19  bench trial of attempted murder, attempted robbery along with enhancements pursuant to Cal.

20  Penal Code § 12022.53(d) (use of a firearm) and § 186.22(b)(1) (criminal gang offense).  He

21  seeks relief on three grounds, specifically that: (1) there was insufficient evidence to convict him

22  of attempted murder because it was not reasonably foreseeable that his armed accomplice during

23  the robbery would shoot the victim; (2) there was insufficient evidence to find a criminal gang

24  enhancement pursuant to the United States Court of Appeals for the Ninth Circuit's decision in

25  Garcia v. Carey, 395 F.3d 1099 (9th Cir 2005); and (3) his sentence of thirty-two years to life

26  constitutes cruel and unusual punishment.  Upon careful review of the record and the applicable

                                    1

1    law, the undersigned will recommend that the Petitioner's habeas petition be denied.

2

## II. FACTUAL BACKGROUND[1]

3

Shortly after midnight on the night of February 21, 2005, Justin
Starks was walking home from Kaiser Permanente Hospital in
4    South Sacramento. As he walked on Grandstaff Drive a white
Crown Victoria passed him. Those in the car yelled profanities at
5    him as it passed. Starks continued walking. As he approached the
intersection at Maybelline Way, defendants crossed the street and
6    accosted him.

7

Defendant Mosley had a gun. He put it to Starks's neck, asking
who Starks was. Defendant Gaines, meanwhile, was reaching into
8    Starks's right coat pocket. Starks grabbed the barrel and pushed
the gun away. Defendant Mosley put the gun away. He asked
9    where Starks was from. Starks recognized defendant Mosley as
someone he had seen two weeks earlier Defendant Mosley said to
10    defendant Gaines: "It's cool." Defendant Gaines said "no," that he
was "going to check [Starks's] pockets anyway." He reached into
11    Starks's pocket again.

12

Starks reached in and removed defendant Gaines's hand.
Defendant Gaines grabbed Starks by the shirt collar and began
13    punching him in the face. During the altercation Starks heard two
gunshots and defendant Gaines announced he had been shot by
14    defendant Mosley. Defendant Mosley "continued to shoot" at
Starks who attempted to flee. He heard several more gunshots. He
15    was hit in the lower back and the buttocks and fell to the ground.
Defendants ran off . . . .

16

Sacramento District Attorney Investigator Adlert Robinson testifed
17    as an expert on African-American gangs as follows: Crips is one
such gang. Robbery is one primary criminal activity of Crips.
18    Crips wear blue. Valley High Crips is a subset. They are
concerned with turf or territory. Leadership is derived from
19    participation in criminal activities, e.g., robberies . . . . Defendant
Gaines by his own admission is a Valley High Crip.

20

If a gang member is in a confrontation the others in his set are
21    obliged to back him. Physical resistence to a robbery by Crips is
disrespectful. Investigator Robinson opined that the robbery of
22    Starks was done for the benefit and at the direction of the Crip
gang. He based that opinion on the way defendants approached the
23    victim, what they said to Starks when they walked up on him
["where are you from" means with what gang are you affiliated],

24

---

25    [1] This statement of facts is taken from the June 12, 2007 opinion by the California Court
of Appeal, Third Appellate District, lodged as document 4 by the Respondent and filed with this
26    court on October 30, 2009 (hereinafter "Slip. Op.").

1

2

3

        the fact that defendants are Crip gang members, the fact that the
crime itself is a crime that is commonly committed by Crip gang
members, or street gang members as a whole, and the fact that
gang members took care of defendant Gaines and left the victim to
die on the street after the robbery occurred.

4 (Slip. Op. at 2-3, 5-6.)

5 ## III. PROCEDURAL HISTORY

6         Petitioner was charged with attempted murder and attempted robbery with two

7 enhancements: (1) a principal to the crime personally charged a firearm and caused great bodily

8 injury (Cal. Penal Code § 12022.53(d)); and (2) the crimes were committed for the benefit of a

9 street gang (Cal. Penal Code § 186.22(b)(1)). After waiving a jury trial, Petitioner was convicted

10 of the charges along with the enhancements and was sentenced to thirty-two years to life

11 imprisonment.[2]

12         Petitioner filed an appeal to the California Court of Appeal, Third Appellate District,

13 which affirmed the judgment on February 8, 2008. The California Supreme Court denied

14 Petitioner's petition for review on May 14, 2008. Subsequently, on April 27, 2009, Petitioner

15 filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

16 ## IV. APPLICABLE LAW AND FEDERAL HABEAS STANDARD

17         The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §

18 2254 governs the instant petition because it was filed after April 24, 1996. Federal habeas corpus

19 relief is not available for any claim decided on the merits in state court proceedings unless the

20 state court's adjudication of the claim:

21

22     [2] Petitioner was sentenced to seven years imprisonment on the attempted murder charge
and twenty-five years to life for the firearm enhancement. The trial court stayed execution the
23 Petitioner's sentence on the attempted robbery charge and corresponding firearm enhancement.
Although Petitioner was found guilty of the gang enhancement, he was not sentenced to any
24 additional imprisonment for that enhancement. See Cal. Penal Code § 12022.53(e)(2) ("An
enhancement for participation in a criminal street gang pursuant to Chapter 11 (commencing with
25 Section 186.20) of Title 7 of Part 1 shall not be imposed on a person in addition to an
enhancement imposed pursuant to this subdivision, unless the person personally used or
26 personally discharged a firearm in the commission of the offense.")

3

1
2
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or

3
4
    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5    28 U.S.C. § 2254(d).

6       If a state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

7    court must conduct a *de novo* review of a petitioner's habeas claims. See Delgadillo v.

8    Woodford, 527 F.3d 919, 925 (9th Cir. 2008). The court looks to the last reasoned state court

9    decision as the basis for the state court judgment. See Alvila v. Galaza, 297 F.3d 911, 918 (9th

10   Cir. 2002). If a state court reaches a decision on the merits but provides no reasoning to support

11   its conclusion, a federal habeas court independently reviews the record to determine whether

12   habeas corpus relief is available under § 2254(d). See Larson v. Palmateer, 515 F.3d 1057, 1062

13   (9th Cir. 2010).

14       All three of Petitioner's claims were raised in the state proceedings. The California Court

15   of Appeal issued a reasoned decision on each of these claims. The California Supreme Court

16   denied Petitioner's petition for review. Therefore, the opinion of the California Court of Appeal

17   provides the basis for the state court judgment. See Alvila, 297 F.3d at 918.

18                   IV. PETITIONER'S CLAIMS FOR REVIEW

19
20
     A.     Sufficiency of the evidence that the shooting was a natural and probable consequence of the attempted robbery

21       Petitioner asserts that there was insufficient evidence to convict him of attempted murder.

22   Petitioner was found guilty of attempted murder pursuant to the natural and probable

23   consequences doctrine. Petitioner states that it was not a natural and probable consequence that

24   Defendant Mosley would use his weapon during their attempted robbery of Mr. Sparks.

25       The Due Process Clause of the Fourteenth Amendment "protects the accused against

26   conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

4

1 crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient
2 evidence to support a conviction, if, "after viewing the evidence in the light most favorable to the
3 prosecution, any rational trier of fact could have found the essential elements of the crime beyond
4 a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he dispositive question
5 under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond
6 a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson,
7 443 U.S. at 318). A petitioner for a federal writ of habeas corpus "faces a heavy burden when
8 challenging the sufficiency of the evidence used to obtain a state conviction on federal due
9 process grounds." Juan H. V. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the
10 writ, the habeas court must find that the decision of the state court reflected an unreasonable
11 application of Jackson and Winship to the facts of the case. See id.

12     The federal habeas court determines sufficiency of the evidence in reference to the
13 substantive elements of the criminal offense as defined by state law. See Jackson, 443 U.S. at
14 324 n.16; Chein, 373 F.3d at 983. In California, an aider and abettor is a person who acting with:
15 (1) knowledge of the unlawful purpose of the perpetrator; (2) with the intent or purpose of
16 committing, encouraging, or facilitating the commission of the offense; (3) by act or advice aids,
17 promotes, encourages, or instigates the commission of the crime. See People v. Beeman, 35
18 Cal.3d 547, 561, 199 Cal. Rptr. 60, 674 P.2d 1318 (1984). A defendant may be held criminally
19 responsible as an accomplice not only for what he intended to aid and abet (the target crime), but
20 also for any other crime that is the natural and probable consequence of the target crime. See
21 People v. Prettyman, 14 Cal.4th 248, 261, 58 Cal. Rptr. 2d 287, 926 P.2d 1013 (1996). Where
22 the allegations raise the natural and probable consequences doctrine, the trier of fact must find
23 two elements in addition to those set forth in the test for aider and abettor liability: (1) that the
24 perpetrator committed an offense other than the target crime; and (2) the offense committed by
25 the perpetrator was a natural and probable consequence of the target crime that the defendant
26 aided and abetted. See id. at 262. Nonetheless, if for example the jury finds a defendant

1 | encouraged a co-defendant to commit an assault, but had no reason to believe the co-defendant
2 | would use a deadly weapon to commit the assault, it may not find that the murder was a natural
3 | and probable consequence of the assault. See id. "The test for an aider and abettor's liability for
4 | collateral criminal offenses . . . depends upon all of the facts and circumstances surrounding the
5 | particular defendant's conduct." People v. Nguyen, 21 Cal. App. 4th 518, 525, 16 Cal. Rptr. 2d
6 | 323 (1993). The natural and probable consequences doctrine uses an objective test whereby
7 | liability "is measured by whether a reasonable person in defendant's position would have or
8 | should have known that the charged offense was a reasonably foreseeable consequence of the act
9 | aided and abetted." Id.

10 | The California Court of Appeal concluded that "a rationale trier of fact could find beyond
11 | a reasonable doubt that the attempted murder was a natural and probable consequence of the
12 | attempted armed robbery of Starks." (Slip. Op. at 18.) This conclusion was not an unreasonable
13 | application of Jackson and Winship to the facts of this case. See Juan H., 408 F.3d at 1275. As
14 | stated by the California Court of Appeal:

15 | Defendant Gaines admits he knew defendant Mosley was armed.
   | However, he suggests that attempted murder was not reasonably
16 | foreseeable because defendant Mosley "had put the gun back into
   | his pocket and had effectively withdrawn from the robbery attempt.
17 | On appeal, we would not infer against the judgment that defendant
   | Mosley had so withdrawn. More to the point, the foreseeability of
18 | the risk that an armed robber may use the weapon if the victim
   | physically resists is measured at the outset. It does not wane with a
19 | momentary turn of events.

20 | The purpose for a weapon in a robbery are to force compliance
   | with the demand to surrender property and to protect the
21 | perpetrators against interference. It is not unforeseeable that a
   | deadly weapon may be used with the intent to kill if there is violent
22 | resistence to the contemplated robbery.

23 | (Slip. Op. at 17-18.)

24 | When viewed in the light most favorable to the prosecution, this evidence was sufficient
25 | to allow a rational trier of fact to conclude that the attempted murder of Mr. Sparks was the
26 | natural and probable consequence of the attempted armed robbery that Petitioner aided and

6

1  abetted.  A rational jury could have found that Petitioner intended to commit a robbery upon

2  Sparks when he confronted him.  Furthermore, Petitioner knew that Mosley carried a gun and

3  could use it on Sparks such that a reasonable person in Petitioner's position would have or

4  should have known that attempted murder was a reasonably foreseeable consequence of the

5  armed attempted robbery.  Petitioner is not entitled to relief on this claim.

6      B.    Sufficiency of the evidence for gang enhancement under § 186.22

7          Relying on the Court of Appeals for the Ninth Circuit's decision in Garcia v. Carey, 395

8  F.3d 1099 (9th Cir. 2005), Petitioner next asserts that there was insufficient evidence to sustain

9  the gang enhancement under § 186.22(b)(1).[3]  California Penal Code § 186.22(b)(1) states that:

10          Except as provided in paragraphs (4) and (5), any person who is
            convicted of a felony committed for the benefit of, at the direction
11          of, or in association with any criminal street gang, with the specific
            intent to promote, further, or assist in any criminal conduct by gang
12          members, shall, upon conviction of that felony, in addition and
            consecutive to the punishment prescribed for the felony or
13          attempted felony of which he or she has been convicted, be
            punished as follows:

14
            (A) Except as provided in subparagraphs (B) and (C), the person
15          shall be punished by an additional term of two, three, or four years
            at the court's discretion.

16
            (B) If the felony is a serious felony, as defined in subdivision (c) of
17          Section 1192.7, the person shall be punished by an additional term
            of five years.

18
            (C) If the felony is a violent felony, as defined in subdivision (c) of
19          Section 667.5, the person shall be punished by an additional term
            of 10 years.

20

21  In this case, the California Court of Appeal found sufficient evidence to support a finding that the

22  gang enhancement had been satisfied under state law as construed by the California Court of

23  Appeal.  The California Court of Appeal stated the following with respect to this claim:

24

25          [3] The gang enhancement pursuant to § 186.22(b)(1) was necessary under these
    circumstances for the court to find and sentence the Petitioner to the firearm enhancement under
26  § 12022.53(d).  See Cal. Penal Code § 12022.53(e)(1)(A).

7

1       Section 186.22(b)(1) does not require intent to facilitate other,
    future offenses by gang members. The specific intent to promote,
2   further, or assist in any criminal conduct by gang members is
    satisfied if, in committing a felony, e.g. attempted robbery, the
3   defendant also intends to promote, further or assist any criminal
    conduct by other gang members. Where two or more gang
4   members knowingly act together to perpetrate a felony, each is
    guilty of that felony and each, by aiding and encouraging his
5   cohort(s), can be found to have the intent to promote, further, or
    assist any criminal conduct by gang members.
6
        The gist of the trial court's remark that there need not be intent to
7   benefit the gang, if there is intent to commit a crime in association
    with other members of the gang is correct. Garcia v. Carey, supra,
8   395 F.3d 1099 is simply incorrect in concluding that the felony to
    be enhanced must be committed with the specific purpose of
9   furthering some other criminal activity of the gang. Intent to . . .
    assist in any other criminal conduct by gang members is shown by
10  acting together to perpetrate an offense.

11      The purpose of the California Street Terrorism Enforcement and
    Prevention Act (Pen. Code, § 186.20 et seq.) is eradication of
12  criminal activity by street gangs by focusing upon patterns of
    criminal gang activity and upon the organized nature of street
13  gangs, which together, are the chief source of terror created by
    street gangs. We can see no reason why the Legislature would
14  differentiate for purposes of this enhancement between crimes by
    violent street gangs against peaceful citizens of their
15  neighborhoods based on a derivative intent to facilitate other,
    additional crimes. The evil against which the enactment aims is all
16  such offenses. The search for the meaning of the words of the
    enactment must be guided by that evident purpose.
17
        In addition to intent to assist in any criminal conduct by gang
18  members, the evidence must show a felony committed for the
    benefit of, at the direction of, or in association with any criminal
19  street gang. It is possible that gang members could commit a crime
    together that is not for the benefit of, at the direction of, or in
20  association with any criminal street gang, e.g., "a frolic and detour
    unrelated to a gang." However, where active street gang members
21  "gang up" on a victim to commit a felony that is paradigmatic gang
    activity, e.g., as here where active Crip members combine forces to
22  commit an armed robbery on the street, there is sufficient evidence
    that the offense is committed "in association" with a criminal street
23  gang.

24  (Slip. Op. at 12-15 (internal quotation marks, citations and footnotes omitted).)

25      Normally, this would end the matter in Respondent's favor, however, this Court must also

26  consider the effect of two decisions by the Court of Appeals for the Ninth Circuit; specifically the

1  aforementioned Garcia, 395 F.3d 1099 and Briceno v. Scribner, 555 F.3d 1069 (9th Cir. 2009).

2  Under the Garcia/Briceno rule, a prosecutor must satisfy two prongs for there to be

3  sufficient evidence to warrant a finding of a gang enhancement pursuant to § 186.22(b)(1).

4  First, the evidence must show that the defendant committed the felony "for the benefit of, at the

5  discretion of, or in association with [a] criminal street gang." Briceno, 555 F.3d at 1078 (quoting

6  Cal. Penal Code § 186.22(b)(1)). Second, the evidence must show that the defendant committed

7  the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang

8  members." Id. (quoting Cal. Penal Code § 186.22(b)(1)). As noted by the Ninth Circuit, it is

9  important that these two requirements are kept separate and not merged. Furthermore, the

10  second prong inquiry is not satisfied by evidence of mere membership in a criminal street gang

11  alone. See id. (citing Garcia, 395 F.3d at 1102-03 & n.5).

12  In Garcia, the court found that:

13          There is nothing in this record, however, that would support an
               inference that Garcia robbed Bojorquez with the specific intent to
14          facilitate other criminal conduct by the E.M.F. The evidence
               indicates that Garcia was a gang member and that he robbed
15          Bojorquez in an area known to be in the heart of the gang's "turf."
               Detective Hernandez, the gang expert, testified that the gang was
16          "turf oriented," and he described three robberies committed by
               E.M.F. members in El Monte during the few months prior to
17          Garcia's offense. But there is no evidence indicating that this
               robbery was committed with the specific purpose of furthering
18          other gang criminal activity, and there is nothing inherent in the
               robbery that would indicate that it furthers some other crime.
19          *There is nothing on the record that connects the "turf-orientated"
               nature of the gang with the commission of robberies generally, or*
20          *more importantly, with the commission of this robbery in
               particular.* There is no testimony that protective of turf enables
21          any other kind of criminal activity of the gang. The expert's
               testimony is singularly silent on what criminal activity of the gang
22          was furthered or intended to be furthered by the robbery of
               Bojorquez.

23

24  Id. at 1103 (emphasis added). Thus, the Ninth Circuit found that there was a lack of evidentiary

25  support for the specific intent to further other gang criminal activity. See id. at 1004.

26  In Briceno, the Ninth Circuit reaffirmed Garcia despite the fact that the California

9

1  Appellate Court had held that Garcia misinterpreted California law. As this court has stated
2  recently, "every California Court of Appeal decision since Briceno has agreed that Briceno and
3  Garcia misinterpreted California law with respect to whether the crime must be committed in
4  furtherance of some other criminal activity, and declined to follow them." Lopez v. Walker, Civ.
5  No. 08-0598, 2010 WL 1558953, at *12 n.49 (E.D. Cal. April 19, 2010). Nevertheless, as
6  Garcia and Briceno remain the law in this Circuit, we shall apply the standard enunciated in those
7  two opinions as they are binding on this court at this time.[4]

8          With respect to the first prong of the Garcia/Briceno test, the gang expert in this case
9  testified that the crime committed by the Petitioner was done for the benefit of the gang. He
10  testified that this was best illustrated by "[t]he way the individuals approached the victim [Mr.
11  Sparks], what they said to the victim when they walked up on him, the fact that they are Crip
12  members themselves, the fact that the crime itself is a crime that is commonly committed by Crip
13  gang members." (Reporter's Tr. at 811.) When this elicited record evidence is viewed in the
14  light most favorable to the prosecution, the first prong of the Garcia/Briceno test was met. (Id.)

15         Secondly, Petitioner's crime promoted the criminal activity of the Crips. The expert
16  testified that the Crips were concerned with their turf or territory. (Reporter's Tr. at 785.) For
17  example, the expert stated that there were 29th Street Crips and Valley High Crips and that those
18  were the areas that those gangs claimed. The expert further testified that in the City of
19  Sacramento there were 653 validated Crip members. (Id.)

20

21  [4] The Court of Appeals for the Ninth Circuit recently certified the following question of
   state law [amongst others] for which there is no controlling authority to the California Supreme
22  Court: "Does California's criminal street gang enhancement statute, in particular the element of
   'specific intent to promote, further, or assist in any criminal conduct by gang members" in
23  California Penal Code section 186.22(b)(1), require proof that the defendant specifically intended
   to promote, further, or assist in other criminal gang activity, apart from the offense of
   conviction." Emery v. Clark, 604 F.3d 1102, 1103-04 (9th Cir. 2010) (citing Garcia, 395 at
24  1100-01, 1103-04; Briceno, 555 F.3d at 1078-83; People v. Romero, 140 Cal. App. 4th 15, 19,
   43 Cal. Rptr. 3d 862 (2006); People v. Hill, 142 Cal. App. 4th 770, 774, 47 Cal. Rptr. 3d 875
25  (2006); People v. Vazquez, 178 Cal. App. 4th 347, 353-55, 100 Cal. Rptr. 3d 351 (2009)).
   Nevertheless, until the California Supreme Court answers this certified question, this court is
26  bound by the Ninth Circuit's opinions in Garcia and Briceno.

10

1    Unlike Garcia and Briceno, there was evidence which connected the "turf-orientated"
2  nature of the Crips with the commission of this attempted robbery and attempted murder of Mr.
3  Sparks. First, Mr. Sparks was specifically asked who he was with a gun to his head during the
4  attempted robbery. (Id. at 78.) Additionally, Mr. Sparks was asked where he was from during
5  the robbery attempt. (Id. at 83.) As noted by the expert at trial, when a Crip gang member asks
6  someone where is he from, "it's a way to identify an individual, it's a way for them to find out
7  what the individual is about because they don't know who he is or they're trying to get the
8  individual to say where's from or what he's claiming." (Id. at 812.) According to the expert this
9  is important "[b]ecause you want to know who you are dealing with. The individual you might
10  be dealing with might be a rival gang member and you want to be able to know that." (Id. at
11  812.) When viewed in the light most favorable to the prosecution, the evidence elicited in the
12  record connected the "turf-oriented" nature of the Crips to this attempted robbery and attempted
13  murder of Mr. Sparks in a way that was not present in Garcia and Briceno so as to satisfy the
14  second prong of the test. A rational jury could have found that Petitioner acted with the specific
15  intent to promote the criminal activity of the gang.

16    Thus, in the context of the whole record, a rational jury could have found that Petitioner
17  satisfied the elements necessary to support a finding of a gang enhancement under §
18  186.22(b)(1). Petitioner is not entitled to relief on this claim.

19    C.    Cruel and Unusual Punishment

20    Finally, Petitioner asserts that his sentence of thirty-two years to life imprisonment
21  violates the Eighth Amendment's prohibition against cruel and unusual punishment and the
22  California Constitution.[5] Respondent argues that this claim is procedurally defaulted because the
23  California Court of Appeal found that it was forfeited on appeal for failure to raise it in the trial

24

25    [5] To the extent that Petitioner claims his sentence was cruel and unusual under the
26  California Constitution, this court notes that "federal habeas relief does not lie for errors in state
law." See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

11

1 court. For the following reasons, this court agrees with the Respondent that this claim is
2 procedurally defaulted.

3        A federal court will not review a petitioner's claim if the state court denied relief on that
4 claim pursuant to a state law that is independent of federal law and adequate to support the
5 judgment. See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Ylst v. Nunnemaker, 501
6 U.S. 797, 801 (1991); Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th
7 Cir. 1996). A state court's refusal to hear the merits of a claim because of the petitioner's failure
8 to follow a state procedural rule is considered denial of relief on an independent and adequate
9 state ground. See Harris v. Reed, 489 U.S. 255, 260-61 (1989). The state rule for these purposes
10 is only "adequate" if it is "firmly established and regularly followed." Id. (citing Ford v.
11 Georgia, 498 U.S. 411, 424 (1991)); see also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir.
12 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and
13 consistently applied."). The state rule must also be "independent" in that it is not "interwoven
14 with the federal law." Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (citing Michigan
15 v. Long, 463 U.S. 1032, 1040-41 (1983)).

16        Furthermore, procedural default can only block a claim in federal court if the state court,
17 "clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S.
18 at 263. This means that the state court must have specifically stated that it was denying relief on
19 a procedural ground. See Ylst, 501 U.S. at 803; Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th
20 Cir. 1993).

21        In this case, the California Court of Appeal refused to consider this claim on the merits
22 pursuant to California's contemporaneous objection rule. The Court of Appeal stated the
23 following:

24             Defendant Gaines contends that his sentence amounts to cruel and
            unusual punishment. He argues that 32 years to life is grossly
25             disproportionate to his culpability under the reasoning of People v.
            Dillon, (1983) 34 Cal.3d 441 (Dillon). He points to the fact that he
26             was only 19 years old at the time of the offense, had only one prior

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

conviction of record, was not the gunman, and to his claim the
shooting was marginally foreseeable. The claim is forfeited on
appeal for failure to raise it in the trial court.

A Dillon claim turns in significant part on issuable facts about the
crime in question and facts about the offender. (Dillon, supra, 34
Cal.3d at p. 479.) Both "the totality of the circumstances
surrounding the commission of the offense in the case at bar,
including such factors as its motive, the way it was committed, the
extent of the defendant's involvement, and the consequences of his
acts" and "whether the punishment is grossly disproportionate to
the defendant's individual culpability as shown by such factors as
his age, prior criminality, personal characteristics and state of
mind" require fact adduction and disputed fact resolution. (Ibid.)
Accordingly, a Dillon claim must be raised in the trial court or it is
forfeited on appeal. (People v. Norman, (2003) 109 Cal.App.4th
221, 229, People v. DeJesus (1995) 38 Cal.App.4th 1, 27.)
Defendant Gaines argues in his reply brief that the Dillon claim
was sufficiently raised below by his attorney's lament that it was a
shame that a teenager could receive a life term for an offense based
on the natural and probable consequences doctrine. He submits
this was sufficient to "put the court on notice" that such a claim
was being raised. To find that such an equivocal remark in passing
suffices would be a disservice to the trial court, to the prosecution,
and to the purposes for requiring the claim to be vetted by the trier
of fact.

Defendant Gaines also argues in his reply brief that, under case
law, the court has discretion to reach claims asserting "the
deprivation of certain fundamental, constitutional rights" raised for
the first time on appeal. (See, e.g., People v. Vera (1997) 15
Cal.4th 269, 276.) He does not show how the claimed right he
proffers fits into that case law. A Dillon claim is particularly
unsuited for the exercise of such discretion, because the rule
requiring that it be raised in the trial court is to ensure that the
claim is properly and adequately developed for adjudication.
Assuming for the sake of discussion that we have discretion to
consider such a claim, we decline to exercise it on that ground.
Defendant Gaines lastly responds by raising in his reply brief the
new claim that trial counsel rendered ineffective assistance of
counsel in failing to raise this claim at sentencing. He submits that
the claim should be entertained on appeal rather than on habeas
corpus because there is no conceivable tactical reason for failing to
raise the claim in the trial court. "Obvious considerations of
fairness in argument demand that the appellant present all of his
points in the opening brief." (9 Witkin, Cal. Procedure, supra, §
616, pp. 647-648.) Accordingly, points raised for the first time in
the reply brief are not considered, absent circumstances not present
here. (Ibid.)

For all the foregoing reasons, the Dillon claim is forfeited on

13

1          appeal.

2   (Slip. Op. at 18-21.)

3       Petitioner failed to challenge his sentence at the time it was imposed. California's
4 contemporaneous objection rule is consistently applied independent of federal law. <u>See</u>
5 <u>Melendez v. Pliler</u>, 288 F.3d 1120, 1125 (9th Cir. 2002); <u>Vansickel v. White</u>, 166 F.3d 953, 957
6 (9th Cir. 1999). Petitioner makes no showing that the contemporaneous objection rule was not
7 an adequate and independent basis for the decision.

8       Nevertheless, even if the state rule is independent and adequate, the claim may be
9 reviewed by the federal court if the petitioner can show: (1) cause for the default and actual
10 prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the
11 claims will result in a fundamental miscarriage of justice. <u>See</u> <u>Coleman</u>, 501 U.S. at 749-50. In
12 his traverse, Petitioner alludes to the fact that his trial counsel could or should have said more
13 than he did at sentencing so as to preserve his cruel and unusual punishment claim. To the extent
14 that this constituted a claim by Petitioner that his counsel was constitutionally ineffective for
15 failing to preserve this claim by properly objecting to the trial court, this court declines to address
16 that argument since it was not raised by the Petitioner in his opening brief, but only in his
17 traverse. <u>See</u> <u>Cedano-Viera v. Ashcroft</u>, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003); <u>Cacoperdo v.</u>
18 <u>Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994) ("A traverse is not the proper pleading to raise
19 additional grounds for relief.").[6] Finally, Petitioner has not presented any evidence establishing
20 his actual innocence such that failing to consider it on the merits would constitute a fundamental
21 miscarriage of justice. Therefore, Petitioner is procedurally barred from bringing his claim that

22

23      [6] Furthermore, Petitioner failed to properly raise this ineffective assistance of counsel
claim in state court as noted by the California Court of Appeal because he only raised it in his
reply appellate brief. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52 (2000) (stating that
24 counsel's ineffectiveness in failing to properly preserve a claim for review in state court can
constitute cause to overcome procedural default, however, ineffective assistance adequate to
25 establish cause for the procedural default of some other constitutional claim is itself an
independent constitutional claim and that constitutional claim like others is required to be first
26 raised in state court).

14

1  his sentence constitutes cruel and unusual punishment.

2  VI. CONCLUSION

3  For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's
4  application for writ of habeas corpus be denied.

5  These findings and recommendations are submitted to the United States District Judge
6  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days
7  after being served with these findings and recommendations, any party may file written
8  objections with the court and serve a copy on all parties.  Such a document should be captioned
9  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
10  shall be served and filed within seven days after service of the objections.  The parties are
11  advised that failure to file objections within the specified time may waive the right to appeal the
12  District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he
13  elects to file, petitioner may address whether a certificate of appealability should issue in the
14  event he elects to file an appeal from the judgment in this case. *See* Rule 11, Federal Rules
15  Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability
16  when it enters a final order adverse to the applicant).

17  DATED: September 9, 2010

18
19  TIMOTHY J BOMMER
    UNITED STATES MAGISTRATE JUDGE
20
21
22
23
24
25
26

15